# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ENRIQUE J. ALVAREZ,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **No. 3:05CV01718 (DJS)** |
| | : | |
| **WILLIAM HANSEN,** | : | |
| **PHILIP S. CHESTER,** | : | |
| **PATRICK McMAHON,** | : | |
| **JAMES R. TAYLOR, and** | : | |
| **TOWN OF SUFFIELD,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM OF DECISION AND ORDER</u>

Plaintiff Enrique Alvarez ("Alvarez") brings this 42 U.S.C. § 1983 action against the

Town of Suffield ("the Town"), William Hansen ("Hansen"), Philip Chester ("Chester"), Patrick

McMahon ("McMahon"), and James Taylor ("Taylor"). Alvarez alleges that the defendants

violated his constitutional right to equal protection. The defendants filed a motion to dismiss,

pursuant to Rule 12(b)(6) of the Federal Rules of Procedure ("Fed. R. Civ. P."), on January 18,

2005. (See dkt. # 15.) Because the motion relied upon materials outside of the pleadings, the

court issued an order, on October 10, 2006, which converted the motion into a motion for

summary judgment and allowed the parties to file supplemental briefs. (See dkt. # 24.)

Thereafter, on November 13, 2006, the defendants filed a supplemental motion for summary

judgment. (See dkt. # 25.) For the reasons set forth herein, defendants' motion to dismiss **(dkt.**

**# 15)** is **GRANTED in part** and defendants' motion for summary judgment **(dkt. # 25)** is

**GRANTED**.

# I.  FACTS

This action concerns Alvarez's efforts to place a freestanding sign in front of his business, which is located at 178 Mountain Road in Suffield, Connecticut.  Alvarez's property contains a building that is situated approximately 60 feet away from Mountain Road.  The parties agree that, before Alvarez purchased this property, the State of Connecticut ("the State") took a right-of-way on Route # 168/190 (Mountain Road) and that this right-of-way comes to within five feet of the building on Alvarez's lot.

Shortly after Alvarez purchased the property, Hansen, the Chair of the Town of Suffield Heritage Committee ("the Heritage Committee")[1], appeared at Alvarez's home.  During this encounter, Alvarez told Hansen that he wanted the name, "The Retirement Doctor," to appear on his sign.  Alvarez contends that Hansen replied that it was a "stupid" name.  He further asserts that Hansen attempted to sell him a sign.[2]  The defendants offer a different version of events. They maintain that although Hansen approached Alvarez regarding the materials to be used in the construction of a sign at 178 Mountain Road, he did not attempt to sell Alvarez a sign.  Rather, they contend that Hansen merely referred Alvarez to Little John's Sign Factory, a company with which Hansen was familiar but had no personal or financial relationship.

The parties agree that Alvarez sought to place a signpost on his property, in the five foot space between his building and the State's right-of-way.  This would cause the square portion of

---

[1]The Heritage Committee is a group of nine citizen volunteers appointed by the Board of Selectmen and charged with the goal of making recommendations to various Boards and Commissions on methods to preserve the Town's rural character.

[2]According to Alvarez, Hansen came to his home uninvited on at least two other occasions, during which Hansen offered to sell Alvarez a sign that could be approved by the Suffield Zoning Board of Appeals.

the sign to hang over the State-owned right-of-way.  When Alvarez applied to the Town's

Building Inspector's Office for a permit to construct this freestanding sign, his application was

referred to James Taylor ("Taylor"), the Town's Zoning Enforcement Officer.[3]  According to

Taylor, he denied Alvarez's application because the proposed sign did not comply with Section

3.49 of the Town's Zoning Regulations ("Section 3.49"), which regulates signs in business

districts.  Pursuant to Section 3.49, freestanding signs are subject to a setback line 20 feet from

the street line.  Taylor maintains that Alvarez's sign did not comply with the setback requirement

because the State's right-of-way extended the street line to within five feet of the Alvarez's

building.  Thus, Taylor contends that Alvarez's proposed sign would have stood approximately

five feet from the street line in violation of the 20-foot setback requirement.

During his deposition, Alvarez admitted that he would need a variance from the Town's

zoning regulations to place his sign in this location.  Indeed, when he was asked, "You don't

dispute that you need a variance from the zoning regulations in order to erect the sign on your

property, do you?" he replied, "No."  (Dkt. # 26, Ex. 1, Alvarez Dep. 35:17-20.)  Alvarez further

admitted that the variance could only be granted or denied by the Town's Zoning Board of

Appeals ("ZBA").[4]  (Id. at 21-23.)

On January 28, 2003, Alvarez filed an application with the ZBA.  This application was

---

[3]The parties dispute Taylor's duties.  Defendants argue that Taylor's position requires that
he make judgments as to whether properties and/or structures conform to the zoning
requirements whereas plaintiff contends that Taylor has a nondiscretionary duty to enforce the
laws under his jurisdiction equally as to all persons.

[4]Alvarez, in his Local Rule 56 Statement also admitted that the ZBA is the highest policy-
setting official for purposes of granting his application for a zoning variance that would permit
him to place his sign on his property.  (See dkt. # 26.)

the first of many in which Alvarez sought to obtain a zoning variance from the 20-foot setback requirement. The parties dispute whether members of the Heritage Committee were concerned that, if the ZBA granted the variance, it would create a precedent for future businesses. After the ZBA denied Alvarez's first application, he subsequently filed two other applications. Alvarez's second hearing before the ZBA was conducted in February 2003. After the ZBA denied this application, Alvarez met with a representative of the Connecticut Department of Transportation ("DOT") to inquire about leasing part of the State's right-of-way. Then, on August 26, 2003, Alvarez again went before the ZBA. At this proceeding, Alvarez presented a letter from the State, which indicated that the State intended to lease its right-of-way to Alvarez. Alvarez's application was deemed incomplete, and the ZBA continued his case until September 2003. Then, in September 2003, the ZBA again denied Alvarez's application.

The parties agree that, while Alvarez's applications were pending before the ZBA, McMahon, the Town's Director of Economic Planning and Development, and Chester, the Town Planner, met with Alvarez and Alvarez's attorney at the behest of Alvarez's attorney.[5] The purpose of this visit was to discuss the location of the proposed sign and whether the ZBA had the authority to regulate its placement.

In November 2003, Alvarez signed a lease with the DOT. Alvarez argues that he is the only property-owner who obtained a lease from the State. Chester maintains that, after Alvarez entered into this lease agreement, a DOT representative contacted him. According to Chester, it was the DOT's position that all property owners with signs within the State's right-of-way need

_____

[5]Chester's duties as Town Planner and McMahon's duties as Director of Economic Planning and Development included providing staff support to the Heritage Committee.

to obtain a lease from the State.

On February 3, 2004, Alvarez erected his sign even though he had not previously obtained a permit or a variance from the zoning regulations. During his deposition, Alvarez provided the following testimony regarding his sign,

> Q. Mr. Alvarez, is it correct that you put up your sign without a permit?
>
> A. That's correct.
>
> Q. Okay. And the zoning regulations required that you obtain a permit before putting up your sign?
>
> A. Yes, but they're only enforced against me.

(Id. at 54:13-18.) On February 5, 2004, Taylor issued a cease and desist order, which was served upon Alvarez. The cease and desist order directed Alvarez to remove the sign. It lists the nature of the violation as being, "[p]lacement of a sign without zoning or building permit and failure to comply with 20 foot front set-back requirement." (Dkt. # 25-10.) Alvarez, however, maintains that the Town's zoning regulations were arbitrarily enforced against him because, at the time of the ZBA proceedings, there were eight other signs on the State's right-of-way that were in violation of the Town's zoning laws. He also argues that there were eleven other signs on Mountain Road that did not comply with the 20-foot setback requirement. Yet, according to Alvarez, Taylor did not cite any of these property owners for their violations.

On April 27, 2004, Alvarez appeared before the ZBA and asked, through counsel, that the cease and desist order be vacated and that his request for a variance from the 20-foot setback requirement be granted. The ZBA denied both of these requests in May 2004. Alvarez admits that during the public hearings regarding his applications, the ZBA accepted materials from

various individuals, including himself. He also admits that the ZBA deliberated before voting on his applications and that two board members voted in his favor.

Alvarez appealed the ZBA's decision to the State of Connecticut Superior Court ("the Superior Court"). The Superior Court affirmed the ZBA's decision of May 2004. Specifically, the Superior Court found that there was not a hardship sufficient to compel a variance; that the ZBA's decision was not motivated by discriminatory intent, nor was the stated reason, lack of hardship, pretextual; that the ZBA's decision was not arbitrary and unfair and did not constitute a denial of equal protection; and that the actions of the zoning enforcement officer were not arbitrary or impermissibly discriminatory. (See dkt. # 25-16.) Alvarez did not appeal the Superior Court's decision. Indeed, he provided the following deposition testimony,

> Q. And you've already appealed the denial of your application for a variance, as well as Mr. Taylor's issuance of a cease and desist order to the Superior Court. Correct?
>
> A. That's correct.
>
> Q. And those decisions were affirmed; is that correct?
>
> A. That's correct.
>
> Q. And you did not appeal the decisions of the Superior Court?
>
> A. Right.
>
> A. And I don't want to know the substance of any conversations, but did you consult with counsel with respect to the merits of an appeal?
>
> A. Yes.
>
> Q. Okay. And ultimately [you] determined not to pursue on appeal, correct?
>
> A. That's correct.

(Dkt. # 25-14, Alvarez Dep. at 29:13-30:8.)

In this action, Alvarez argues that the Town's zoning regulations were only enforced against him.  (See dkt. # 26, Ex.1, Alvarez Dep. at 54:18.)   Yet, during his deposition, he testified that Hansen, Chester, McMahon, and Taylor were not members of the ZBA.  Moreover, Alvarez offers no evidence showing that Hansen, Chester, and McMahon had any authority to enforce the Town's zoning regulations.  Despite this, Alvarez maintains that Hansen, Chester, McMahon, and Taylor prevented him from erecting his sign by jointly acting together and attending ZBA meetings.  Although the parties agree that Taylor[6] attended all of the ZBA meetings and public hearings regarding Alvarez's variance application, they dispute whether Chester, McMahon, and Hansen attended these proceedings.

Alvarez further argues that Hansen, Chester, McMahon, and Taylor participated in the ZBA's deliberations. Although Alvarez admits that these individuals did not vote on his application to obtain a zoning variance, he argues that they communicated with the Heritage Committee and the ZBA.  For instance, he observes that Hansen, as chairman of the Heritage Committee, submitted to the ZBA two letters that stated that the Heritage Committee opposed Alvarez's applications for a zoning variance.  He further asserts that Hansen had other communications with the ZBA relating to his applications for a variance.  With respect to Chester, Alvarez notes that he assisted in the preparation of the above-mentioned two letters in his capacity as Town Planner.  The parties dispute whether Chester had other communications

---

[6]The parties also agree that, during the hearing of April 17, 2004, Taylor explained why he issued the cease and desist order.

7

with the ZBA regarding Alvarez's sign. Lastly, Alvarez contends that McMahon's duties as Director of Economic Planning and Development included providing staff support to the Heritage Committee. While the parties agree that McMahon did not participate in the preparation of any of the Heritage Committee's communications to the ZBA regarding Alvarez's sign, the parties dispute whether McMahon had any other communications with any member of the ZBA regarding Alvarez's proposed sign or application for a variance.

## II. DISCUSSION

Alvarez alleges that the defendants acted jointly and in concert with each other to prevent him from placing a detached sign on his property. He argues that he was subjected to arbitrary, intentional, malicious, and irrational disparate treatment. Alvarez did not, however, assert an equal protection claim premised on race, ethnicity, or national origin. (See dkt. #s 1, 26.)

### A. 12(b)(6) Dismissal

As previously discussed, defendants filed a 12(b)(6) motion to dismiss Alvarez's complaint. Defendants sought to dismiss Alvarez's complaint on the grounds that (1) plaintiff failed to set forth factual allegations of actionable misconduct and (2) the action is barred by the actions of collateral estoppel and res judicata. Because this motion relied upon materials outside the pleadings, the court converted it into a motion for summary judgment and afforded the parties an opportunity to file supplemental materials. The court shall now address each of these arguments in turn.

### 1. Legal Standard

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most

favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Bernheim v. Litt, 79

F.3d 318, 321 (2d Cir. 1996).  Dismissal is warranted only if, under any set of facts that the

plaintiff can prove consistent with the allegations, it is clear that no relief can be granted.  See

Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Cooper v. Parsky, 140 F. 3d 433, 440 (2d

Cir. 1998).  "The issue on a motion to dismiss is not whether the plaintiff prevail, but whether

plaintiff is entitled to offer evidence to support his or her claims." U.S. v. Yale New Haven

Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).  In its review of

a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents

attached as exhibits or incorporated by reference in the pleadings and matters of which judicial

notice may be taken." Samuels v. Air Transp. Local 504, 922 F. 2d 12, 15 (2d Cir. 1993).

2.  Alvarez has Set Forth Allegations of Actionable Misconduct

The allegations in plaintiff's complaint sufficiently state a "class of one" equal protection

claim.  In Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam), the Supreme

Court held that an equal protection claim may be "brought by a 'class of one' where plaintiff

alleges that she has been intentionally treated differently from others similarly situated and that

there is no rational basis for the difference in the treatment." Id. at 564.  The Second Circuit

recently held, in an appeal after jury trial, that to succeed on a "class of one" claim, "the level of

similarity between plaintiffs and the persons with whom they compare themselves must be

extremely high." Neilson v. D'Angelis, 409 F. 3d 100, 104 (2d Cir. 2005) (internal citation and

quotation omitted).  Thus, "a plaintiff in a class of one case must show that (i) no rational person

could regard the circumstances of the plaintiff to differ from those of a comparator to a degree

that would justify the differential treatment on the basis of a legitimate government policy; and

(ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." Id. at 105.

In DeMuria v. Hawkes, 328 F.3d 704, 705-706 (2d Cir. 2003), the Second Circuit permitted  a "class of one" claim to survive a Rule 12(b)(6) motion to dismiss where the complaint only generally alleged that other individuals were treated differently and that the defendant acted maliciously and arbitrarily.  The court observed, "[i]ndeed, it appears that Olech herself did not 'name names' in her complaint, but made the more general allegation that similarly situated property owners had been asked for a different easement."  Id. at 707.

Alvarez has sufficiently pleaded a "class of one" equal protection claim.  He alleges that on January 28, 2003,  he "requested permission from the duly authorized officials of the Town of Suffield, including the Zoning Board of Appeals, to place on his said property a sign made by someone other than defendant Hansen."  (Dkt. # 1.)  He further alleges, "all of the defendants jointly acted to prevent, and in fact did prevent, the plaintiff from placing the aforesaid sign on his said property although the defendants have permitted many other persons identically situated to the plaintiff to place upon their properties on Mountain Road signs of the same type, configuration and proximity to the road which they have prevented the plaintiff from placing." (id.)  In addition, plaintiff alleges that the disparate treatment he endured was arbitrary, intentional, malicious and irrational.  (See id.)  The court's function at this stage is not to evaluate or weigh the evidence, but rather to view the complaint in the light most favorable to the plaintiff.  As such, the court finds that the allegations in the complaint are sufficient to state a "class of one" equal protection claim under Olech because plaintiff has alleged that he was intentionally treated differently from others similarly situated and that there is no rational basis

for the difference in the treatment.  Further, the court finds that Alvarez has met the requirement

that there be a high level of similarity between plaintiff and the persons with whom plaintiff

compares himself because he alleges that defendants permitted "persons identically situated to

the plaintiff" to place upon similar properties, signs of the "same type, configuration and

proximity to the road."  (id.)  Thus, to the extent defendants' motion to dismiss (dkt. # 15) seeks

to dismiss Alvarez's complaint for failing to state a claim upon which relief may be granted, their

motion is **DENIED.**

### B. Conversion into a Motion for Summary Judgment

A court may transform a 12(b)(6) motion into a summary judgment motion pursuant to

Rule 56(c) if the parties submit evidence beyond the pleadings, however, such action is

inappropriate unless the parties are given notice and an opportunity to respond appropriately.

Fed. R. Civ. P. 12(b)(6) ("If, on a [12(b)(6) motion], . . . , matters outside the pleading are

presented to and not excluded by the court, the motion shall be treated as one for summary

judgment . . . and all parties shall be given reasonable opportunity to present all material made

pertinent to such a motion by Rule 56."); Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir.

2000).  Here, the court, on October 10, 2006, converted the defendants' 12(b)(6) motion to

dismiss (see dkt. # 15), into a motion for summary judgment because the defendants premised

their res judicata and collateral estoppel arguments upon materials outside of the pleadings.  The

court also allowed the parties to file supplemental briefs.  (See dkt. # 24.)  Defendants, in their

supplemental brief, argue that they are entitled to summary judgment because Alvarez has not, as

a matter of law, established that Hansen, Chester, McMahon, and Taylor were personally

involved in the alleged constitutional deprivation.  In addition, defendants assert the affirmative defenses of qualified immunity, res judicata, and collateral estoppel.

## 1.  Summary Judgment Standard

A motion for summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burdens of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'"  American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).  A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all inferences and ambiguities in a light most favorable to the nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.

## 2.  The Town

The defendants, in both their motion to dismiss, (see dkt. # 15), and their supplemental motion for summary judgment, (see dkt. # 25), argue that the Town is entitled to summary

judgment on the grounds of <u>res judicata</u> and collateral estoppel. Alvarez, in his opposition

papers, states, "the plaintiff does not oppose the granting of summary judgment in favor of the

town, and pursues this action only against the four individual defendants." (Dkt. # 26.) Thus, to

the extent the defendants' motion to dismiss (<u>see</u> dkt. # 14) and motion for summary judgment

(<u>see</u> dkt. # 25) argue that Alvarez's equal protection claim against the Town is barred by the

doctrines of <u>res judicata</u> and collateral estoppel, these motions **(<u>see</u> dkt. #s 15, 25)** are

**GRANTED**.

3. The Individual Defendants

Alvarez, in his Complaint, alleges that Hansen, Chester, McMahon, and Taylor have

deprived him of equal protection of the laws in violation of the Fourteenth Amendment to the

United States Constitution because "the defendants jointly acted to prevent, and in fact did

prevent, the plaintiff from placing the aforesaid sign on his said property although the defendants

have permitted many other persons identically situated to the plaintiff to place upon their

properties on Mountain Road signs of the same type, configuration and proximity to the road

which they have prevented the plaintiff from placing." (Dkt. # 1.) He further asserts that "the

disparate treatment to which the defendants have subjected the plaintiff is arbitrary, intentional,

malicious, and irrational." (<u>Id.</u>) Defendants argue that they are entitled to judgment as a matter

of law because Alvarez cannot establish that Hansen, Chester, McMahon, and Taylor denied

Alvarez a right, privilege, or immunity secured by the Constitution or laws of the United States.

a. Personal Involvement in the Alleged Constitutional Deprivation

Defendants argue that Alvarez is unable to show that Hansen, Chester, McMahon, and

Taylor were personally involved in the alleged constitutional deprivation, and thus they cannot be

found liable under 42 U.S.C. § 1983. "Title 42 U.S.C. § 1983 provides a remedy for deprivation of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage of any State or Territory." Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) (internal quotations omitted). On its own, Section 1983 does not provide a source of substantive rights; instead it is a method for vindicating federal rights conferred elsewhere in federal statutes and the Constitution. See Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. See Baker, 443 U.S. at 140.

It is further necessary to establish a defendant's personal involvement in the alleged constitutional deprivation. "In this Circuit, personal involvement of [a] defendant[] in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Moffitt v. Town of Brookfield, 950 F. 2d 880, 886 (2d Cir. 1991) (quotations and citations omitted). The Second Circuit defines personal involvement in this context as "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Black v. Coughlin, 76 F. 3d 72, 74 (2d Cir. 1996); see Wright v. Smith, 31 F. 3d 496, 501 (2d Cir. 1994), abrogated on other grounds, Sandin v. Conner, 515 U.S. 472 (1995). Furthermore, "[t]o recover compensatory damages under Section 1983, a plaintiff must prove that his injuries were proximately caused by the constitutional violation." Gibeau v. Nellis, 18 F. 3d 107, 110 (2d Cir. 1994) (citing Miner v. City of Glens Falls, 999 F. 2d 655, 660 (2d Cir. 1993)). Thus, a plaintiff

"must allege a tangible connection between the acts of the defendant and the injuries suffered."

Bass v. Jackson, 790 F. 2d 260, 263 (2d Cir. 1986). Here, although there is no dispute that the

§ 1983 claim against Hansen, Chester, McMahon, and Taylor is grounded in the Fourteenth

Amendment, Alvarez has not produced sufficient evidence to establish that the Hansen, Chester,

McMahon, and Taylor were personally involved in the alleged constitutional deprivation.

i. Hansen

Defendants argue that Alvarez has failed to raise an issue of material fact regarding the

personal involvement of Hansen in the alleged violation of his rights. They also argue that

Alvarez's claim against Hansen fails for lack of evidence of a personal involvement by Hansen in

the alleged deprivation. Alvarez has not produced sufficient evidence to bring his claim to a jury.

First, although Alvarez argues that the defendants "only enforced [the Town's zoning

regulations] against me," (dkt. # 26, Ex.1, Alvarez Dep. at 54:18), he has offered no evidence

indicating that Hansen was responsible for enforcing the Town's zoning regulations. Indeed,

during his deposition, Alvarez admitted that Hansen was not a member of the ZBA and that the

ZBA was the only entity that could grant him the zoning variance he needed to place a sign on

his property. (See id. at 35:17-23.) Thus, he has not shown how Hansen had the authority to

permit Alvarez or any other property owner to place signs on their property.

While Alvarez argues that Hansen authored two letters to the ZBA on behalf of the

Heritage Committee and that Hansen "showed up at my house, uninvited to tell me that he could

get a sign approved by the ZBA," (id. at 41: 8-11), Alvarez has not demonstrated that Hansen's

actions prevented him from obtaining the ZBA's permission to erect his sign. Indeed, Alvarez

admits that the ZBA accepted materials from various individuals, including himself, during the

public hearings regarding his application. He further admits that the ZBA deliberated before voting on his applications and that two board members voted in his favor. Moreover, the court finds that the case of <u>Williams v. Smith</u>, 781 F. 2d 319, 324 (2d Cir. 1986), is instructive here. In <u>Williams</u>, the Second Circuit held that a corrections officer who authored an Inmate Misbehavior Report was not "personally involved" in any due process violation that may have occurred during a disciplinary hearing even though the adjudicatory authority relied upon the report to find an inmate in violation of prison rules. Here, like in <u>Williams</u>, the adjudicatory authority may have relied upon a written document; however, there is no evidence that the author of the document participated in the hearing. Indeed, it appears that Hansen's letters to the ZBA were nothing more than non-binding recommendations that the ZBA deny Alvarez's applications. In addition, the evidence reveals that two ZBA members disregarded Hansen's recommendation when they voted in favor of granting Alvarez's application. Accordingly, even when viewing the facts in the light most favorable to Alvarez, he has not shown, as a matter of law, that Hansen had authority to enforce the Town's zoning regulations or that he somehow proximately caused the ZBA to deny his applications to vacate the cease and desist order and to obligate him to obtain a zoning variance. Thus, Alvarez cannot establish that Hansen in was personally involved in the alleged deprivation, <u>i.e.</u>, the ZBA's decision to deny Alvarez's application to have the cease and desist order vacated and to obtain a variance from the 20 foot setback requirement.

ii. Chester

Defendants next argue that Alvarez has failed to raise an issue of material fact regarding the personal involvement of Chester in the alleged violation of his rights and that Alvarez's claim against Chester fails for lack of evidence of a personal involvement by Chester in the alleged

deprivation. Based on the record evidence, the court finds that there is simply no evidence that

Chester initiated, made, or otherwise caused the ZBA to deny Alvarez's applications. For

instance, although Alvarez argues that the defendants "only enforced [the Town's Zoning

Regulations] against me," (dkt. # 26, Ex.1, Alvarez Dep. at 54:18), he has offered no evidence

showing Chester was responsible for enforcing the Town's zoning regulations. Next, with

respect to Alvarez's contention that Chester and McMahon met with Alvarez and Alvarez's

attorney to discuss Alvarez's proposed sign, the court observes that Alvarez admits that this

meeting was arranged at the behest of Alvarez's attorney. Moreover, Alvarez has not shown how

this meeting prevented him from obtaining a zoning variance from the ZBA. Next, the court

finds that Alvarez's assertions that Chester prevented him from getting a sign by "attend[ing] the

February 20th meeting of the Heritage Committee, and . . .writ[ing] a letter almost identical to

the one written by Mr. Hansen. . . , " (id. at 41:24-42:1), also do not show that Chester was

personally involved in the ZBA's decision to deny Alvarez's applications. Indeed, Alvarez

provided the following deposition testimony regarding Chester,

> Q.     He did not vote. And the final defendant is Mr. Chester. Mr. Chester is
>         not a member of the ZBA, correct?
>
> A.     That's correct.
>
> Q.     And he did not vote on your applications for a variance, correct?
>
> A.     That's correct.

(Dkt. # 25-14, Alvarez Dep. at 29:2-8.) Thus, although the record reveals that Chester, in his

capacity as Town Planner, both provided assistance to the Heritage Committee, and submitted a

letter to the ZBA, Alvarez has not produced any evidence showing that Chester was personally

involved in the denial of his zoning applications or that Chester had the authority to permit other landowners to obtain variances. Indeed, Alvarez admits that during the public hearings regarding his applications, the ZBA accepted materials from various individuals, including himself. Alvarez also does not dispute that the ZBA deliberated before voting on his applications and that in May 2004, two board members voted in favor of granting his application. Accordingly, even when viewing the facts in the light most favorable to Alvarez, he has not shown, as a matter of law, that Chester had authority to enforce the Town's Zoning Regulations or that Chester somehow proximately caused the ZBA to deny Alvarez's applications. Thus, a reasonable jury could not find that Chester was personally involved in preventing Alvarez from erecting a sign.

### iii. McMahon

Defendants also argue that Alvarez has failed to raise an issue of material fact regarding the personal involvement of McMahon in the alleged violation of his rights and that Alvarez's claim against McMahon fails for lack of evidence of an personal involvement by McMahon in the alleged deprivation. Based on the record evidence, the court finds that there is simply no evidence in the record that McMahon initiated, made, or otherwise caused the ZBA to deny Alvarez's applications. Although Alvarez argues that the defendants "only enforced [the Town's zoning regulations] against me," (dkt. # 26, Ex.1, Alvarez Dep. at 54:18), Alvarez has offered no evidence showing McMahon, the Town's Director of Economic Planning and Development, was responsible for enforcing the Town's zoning regulations. Moreover, Alvarez admitted that it was at the request of his own attorney that McMahon and Chester visited 178 Mountain Road and met with Alvarez and Alvarez's attorney to discuss the location of the sign and whether the ZBA had the authority to regulate its placement. In any event, Alvarez has not

explained how the encounter at 178 Mountain Road reveals how McMahon was personally

involved in the alleged constitutional deprivation, i.e., the ZBA's decision to deny Alvarez's

applications.

The court further finds that Alvarez has not offered any evidence that counters

McMahon's statement that he did not participate in preparation of any of the Heritage

Committee's communications to the ZBA regarding Alvarez's sign.  Nor has Alvarez offered any

evidence showing that McMahon in any way caused the ZBA to deny Alvarez's applications.

Indeed, Alvarez provided the following deposition testimony,

> Q.     All right.  And similarly, Mr. McMahon is not a member of the ZBA,
>        correct?
>
> A.     That's correct.
>
> Q.     And he did not vote on any of your applications for a variance that would
>        have permitted you to put up your sign, correct?
>
> A.     That's correct.

(Dkt. # 25-14, Alvarez Dep. at 28:12-18.)  In addition, when Alvarez was asked what it was that

McMahon did to prevent him putting up the sign, Alvarez testified that "Mr. McMahon attended

the Heritage Committee and acted in concert with Chester and Hansen" by "attend[ing] the

meetings. . . ."  (Dkt. # 26, Ex. 1, Alvarez Dep. at 44:21-25.)  However, when Alvarez was

asked, "Did Mr. McMahon have any other communications with the Zoning Board of Appeals of

which you're aware," he responded, "No."  (Id. at 47:15-18.)  Thus, although Alvarez has offered

evidence showing that McMahon may have attended ZBA meetings, this alone is not enough to

establish that McMahon was personally involved in the constitutional deprivation.  Because there

is simply no record evidence that McMahon had authority to enforce the Town's zoning

regulations or that McMahon somehow caused the ZBA to deny Alvarez's applications a reasonable factfinder could not conclude that Alvarez was personally involved in the alleged deprivation, i.e., the ZBA's denial of his application.

### iv. Taylor

Defendants argue that Alvarez has failed to raise an issue of material fact regarding the personal involvement of Taylor in the alleged violation of his rights and that Alvarez's claim against Taylor fails for lack of evidence of personal involvement by Taylor in the alleged deprivation. Here again, based on the record evidence, Alvarez cannot prove that Taylor prevented him from obtaining a zoning variance. Although the record reveals that Taylor attended the ZBA proceedings and testified as to why he issued the cease and desist order, Alvarez admits that the ZBA also accepted materials from various individuals during these proceedings. He further admits that the ZBA deliberated before voting on his applications and that in May 2004, and that two board members voted in his favor. In addition, Alvarez concedes that Taylor was not a member of the ZBA and that the ZBA, not Taylor, was the highest policy-setting official for purposes of granting the his application for a zoning variance. Lastly, Alvarez also testified that, in order to place his sign on his property, he needed to obtain a variance from the ZBA. (See id. at 35:17-23.) Accordingly, even when viewing the facts in the light most favorable to Alvarez, he has not shown, as a matter of law, that Taylor somehow proximately caused the ZBA to deny his applications. As such a jury could not find that Taylor was personally involved in the alleged deprivation, i.e., the ZBA's denial of his application.

b.  The Conduct of the Defendants does not Rise to the
Level of a Constitutional Violation

Alvarez contends that his constitutional right to equal protection was violated because

the zoning regulations were "only enforced against me."  (Id. at 54:13-18.)  The Fourteenth

Amendment to the United States Constitution provides that "[n]o state shall . . . deny to any

person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

"To prove a selective enforcement claim, a plaintiff must demonstrate that laws were not applied

to him as they were applied to similarly situated individuals and that the difference was

intentional and unreasonable."  Deegan v. City of Ithaca, 444 F. 3d 135, 146 (2d Cir. 2006)

(citing Olech, 528 U.S. at 564; Harlen Assocs. v. Inc., Vill. of Mineola, 273 F. 3d 494, 499 (2d

Cir. 2001)).  Although Alvarez argues that Hansen, Chester, McMahon, and Taylor "undertook a

series of actions against plaintiff and only against plaintiff, and all did so in their official

capacities," (see dkt. # 26-1), his equal protection claim fails because he admitted that he needed

a zoning variance to erect his sign, that the only entity that had the authority to grant him a

variance was the ZBA, and that Hansen, Chester, McMahon, and Taylor were not members of the

ZBA.  Because Alvarez has admitted that Hansen, Chester, McMahon, and Taylor did not have

the authority to grant or deny his application for a zoning variance, he cannot show that they

selectively enforced the zoning regulations by preventing him from obtaining a zoning variance.

As such, Hansen, Chester, McMahon, and Taylor[7] are entitled to summary judgment on Alvarez's equal protection claim.

### III.  CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss **(see dkt. # 15)** Alvarez's equal protection claim against the Town on the basis of res judicata is **GRANTED.**  The defendants motion for summary judgment **(dkt. # 25)** is **GRANTED**.  Judgment shall enter for the defendants on all counts of the complaint.  The Clerk of the Court shall close this file.

**SO ORDERED** this ___29th_____ day of June, 2007.

**/s/DJS**

_____

**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**

---

[7]Although Alvarez did not assert a separate equal protection claim against Taylor, Alvarez's deposition testimony infers that Alvarez believes that Taylor also violated his right to equal protection by issuing the cease and desist order.  This claim fails, however, because Alvarez cannot establish that Taylor acted arbitrarily and irrationally.  Alvarez admitted that he erected his sign without a permit in violation of the Town's zoning regulations, thus he cannot establish that the issuance of the cease and desist order was unreasonable.